UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OGONNA HALL #236333,

    Plaintiff,

v.

SCOTT SMITH, et al.,

    Defendants.

_____/

Case No. 2:20-cv-00245

Hon.  Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendants.  (ECF No. 44.)

The Plaintiff in this case – state prisoner Ogonna Hall – filed this civil rights action pursuant to 42 U.S.C. § 1983.  He alleges that his rights were violated while he was confined at the Chippewa Correctional Facility (URF).  (ECF No. 1.) Plaintiff's unverified complaint asserts two separate claims.  First, Hall alleges that Corrections Officer (CO) Smith retaliated against him by ordering an inventory pack-up[1] of his property because he had filed a lawsuit regarding the alleged loss of personal property in the Michigan Court of Claims.  And second, Hall alleges that CO Smith, CO Escherich, and Prison Counselor (PC) Thompson conspired to retaliate against him by conducting the pack-up on May 12, 2020.  (ECF No. 1.)

---

[1] Hall refers to the pack-up as a mock pack-up throughout his pleadings.

1

The evidence and record establish that the May 12, 2020, pack-up was conducted in response to Hall's Michigan Court of Claims lawsuit, but for a legitimate purpose. CO Smith was attempting to obtain a full accounting of Hall's property and to obtain any property inventory records in Hall's possession. Contrary to Hall's allegations, CO Smith did not retaliate against him. Nor is there evidence of a conspiracy among CO Smith, CO Escherich, and PC Thompson to violate Hall's rights. Defendants have met their burden of establishing that no genuine issue of fact exists on these issues.

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

## II. Factual Allegations

Hall was transferred from a local hospital to the Michigan Department of Corrections' Duane Waters Hospital (DWH) on August 8, 2019. (ECF No. 45-2, PageID.304 (Hall's deposition transcript).) Hall stated that his property at URF was packed and sent to CO Smith in the property room and then forwarded to DWH. (*Id.*, PageID.305.) Hall says he did not receive his property while he was at DWH. (*Id.*) Approximately three weeks later, Hall returned to URF without his property. (*Id.*) Hall says that when he did finally receive his property "there was a lot of stuff missing." (*Id.*) Hall filed his Michigan Court of Claims lawsuit because he believed CO Smith failed to follow proper procedures when packing his property, which caused Hall to lose significant personal property. (*Id.*, PageID.306.)

Hall alleges that on May 6, 2020, CO Smith received the complaint regarding the state court case. (ECF No. 1, PageID.4.) Hall says that on May 12, 2020, Smith initiated a pack-up of Hall's property. (*Id.*) PC Thompson informed Hall that CO Escherich would conduct a pack-up of Hall's property. (*Id.*)

Hall says that he complied with the order and while he was placing his property on a table, CO Escherich asked about Hall's lawsuit against CO Smith. (*Id.*) CO Escherich told Hall he wanted to see Hall's legal papers. (*Id.*) When Hall gave him the legal papers, CO Escherich asked if that was all the paperwork pertaining to the lawsuit. (*Id.*) Escherich set aside the legal papers, documented the rest of the property, and then told Hall he could take his property back to his cubicle. (*Id.*) Hall says that this violated MDOC policy because his property should have been placed in authorized containers. (*Id.*, PageID.5.)

Hall says that he was not allowed to pack up his legal work because CO Escherich stated: "I'm going to copy your legal papers so I can give officer Smith a copy per P/C Thompson." (*Id.*) When Hall informed CO Escherich that he did not want his legal work copied, CO Escherich responded that he was making copies. (*Id.*)

CO Escherich made Hall place his legal work in a bag and then walked Hall into a secure area that is not generally accessible to prisoners. (*Id.*) Hall was ordered to place the bag in a file drawer and then given a zip tie to secure the drawer. (*Id.*) Hall then returned to his cubicle. (*Id.*)

Approximately two hours later, CO Escherich took Hall through a hallway and to a room that is not generally accessible to prisoners and instructed Hall to watch him make copies of Hall's legal work. (*Id.*, PageID.6.) CO Escherich then exited the room and CO Smith entered the room to pick up Hall's legal work. (*Id.*) CO Smith began looking through the legal papers. (*Id.*) CO Smith stated: "I got what I need, and I think that I got my point across to you." (*Id.*) Hall says that CO Smith then went to PC Thompson's office, closed the door, and then spoke with her for about 12 minutes. (*Id.*)

Hall asserts two claims in his complaint. First, he says that Defendant CO Smith retaliated against him by initiating the pack-up in response to Hall's Michigan Court of Claims lawsuit. Second, Hall asserts that Defendants CO Escherich and PC Thompson conspired with CO Smith by conducting the pack-up. (*Id.*) Hall says that Defendants knew that their actions – taking Hall to secure areas that are not accessible to prisoners – would cause other inmates to label Hall as an informant or rat. (*Id.*, PageID.7.) Hall says that no valid reason existed for the pack-up. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Retaliation

Hall asserted in his complaint that CO Smith retaliated against him by initiating the pack up because he filed a state court lawsuit against CO Smith. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

### a. Protected Conduct

CO Smith first argues that Hall's act of filing his Michigan Court of Claims lawsuit is not protected conduct.[2] CO Smith argues that because Hall's Court of

---

[2] Hall states that he also filed a grievance naming CO Smith on September 26, 2019. (ECF No. 54, PageID.478.) Hall argues that this grievance also satisfies the protected conduct element of his retaliation claim. CO Smith argues that since Hall

5

Claims lawsuit could not be the basis for a First Amendment access to the court's claim – because it was not a direct appeal of a criminal conviction, a habeas corpus petition, or a civil rights action – it cannot be considered protected conduct for a First Amendment retaliation claim. "[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X,* at 391.

Hall is not asserting an access to the courts claim. Hall asserts that his protected conduct is the filing of his state court lawsuit against Defendant CO Smith. As the Sixth Circuit noted, prisoners may file lawsuits challenging conditions of their confinement. *Thaddeus-X*, at 391 (citing *Lewis v. Casey,* 518 U.S. 343, 355 (1996)). Participation in a class action lawsuit involving access to courts, personal property rights, and classification and placement of prisoners satisfies the element of protected conduct for purposes of a retaliation claim. *King v. Zamiara*, 150 Fed. App'x. 485, 493, n. 2 (6th Cir. 2005).

CO Smith fails to cite authority supporting an argument that a Michigan Court of Claims lawsuit cannot meet the protected conduct element of a retaliation claim. Defendants have not asserted that the Michigan Court of Claims lawsuit was frivolous.³ *See, Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ( An inmate has

---

did not state in his complaint that this grievance was the protected conduct which motivated CO Smith to conduct the pack-up, Hall cannot now argue that this grievance was the basis for his alleged retaliatory pack-up.

³   The case was dismissed because Plaintiff failed to name the Defendants in their official capacities and the Michigan Court of Claims lacked jurisdiction to hear actions against public officials sued in their individual capacities. (ECF No. 45-13.) CO Smith states that he requested an inventory of Hall's property to document the

6

a right to file "non-frivolous" grievances against prison officials.).  In the opinion of the undersigned, a genuine issue of material fact exists as to whether Hall's prior Michigan Court of Claims lawsuit satisfied the retaliation element of protected conduct.  CO Smith's argument that the prior lawsuit was not protected conduct is unsupported by law and fact.[4]

### b.   Adverse Action

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness."  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Confiscation of legal and other personal property may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*.  *See Bell* at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)).

Hall is not simply alleging that the adverse action was the pack-up and the copying of his legal documents.  Hall says that CO Smith initiated the pack-up to make sure that Hall knew he was in control.  Hall further alleges that the procedure

---

property that Plaintiff actually had in his possession.  (ECF No. 46-1, PageID.442 (Smith's corrected affidavit).)  Smith explained that he received the complaint in the aforementioned lawsuit on May 11, 2020.  (*Id.*)  According to Smith, Hall's lawsuit alleged that Hall was missing over $7,000 worth of personal property due to improper packing and documentation.  (*Id.*)  Smith noted that the records associated with Hall's property were "either missing or completed inadequately", so he requested an updated inventory of all of Hall's property on May 12, 2020.  (*Id.*)

[4]   Defendant cites *Taylor v. Carlton*, 1999 U.S. App. Lexis 32764 (6th Cir., Dec. 14, 1999) (ECF No. 45-12), to support the claim that a lawsuit regarding damage to an inmate's television did not fall in the category of cases that could support a constitutional access to the courts claim.  Retaliation was not at issue in that appeal.

7

employed by Defendant Escherich in conducting the pack-up, which involved moving him to restricted areas of the prison, caused other prisoners to believe that he was a rat and an informant for CO Escherich.  Hall says that due to Defendants' actions, he has been assaulted and shunned by other inmates who now believe he is rat or informant.  (ECF No. 54-1, PageID.492 (Affidavit of Hall).)

A pack-up cannot be considered adverse action in a prison setting.  MDOC Policy provides that a prisoner may be given an order to pack up property at any time. MDOC Policy Directive 04.07.112 (EE).  Such routine and expected orders cannot establish adverse action for purposes of a retaliation claim.  *Cook v. Cashler*, No. 1:11-cv-637, 2012 WL 591698, *10 (W.D. Mich. Feb. 22, 2012) ("[T]he Court finds that ordering Plaintiff to pack-up his property, while perhaps irritating, would not deter a person of ordinary firmness from engaging in protected conduct.").

Similarly, Hall did not experience an adverse action simply because some of his legal documents were copied.[5]  CO Smith did not confiscate his legal documents or retain the copies.  All of Hall's documents were returned to him, including the copies that were made.

Hall, however, alleges that this was not a routine pack-up.  Hall says that Defendant Escherich escorted him around under unusual circumstances in Unit H and then in Unit G, where prisoners are normally not allowed, before making the copies.  Hall says that Defendants knew that this conduct was enough "in a prison

---

[5]   It seems more common for prisoners to make complaints that prison officials refuse to copy their legal documents.  Defendants assert that they were only trying to find records that could document the property that Hall had in his possession.

8

setting to be publicly labeled as a 'rat/informant'." (ECF No. 54, PageID.482; ECF No. 54-1, PageID.492.) Hall says that after this event he was labeled a rat by other prisoners and was physically assaulted more than four times by prisoners who now believe he is an informant. (*Id.*, PageID.483.)

In the opinion of the undersigned, Hall's allegations regarding being taken to secure areas of the prison during the performance of the pack-up are sufficient to show a genuine issue of fact exists regarding whether *Defendant Escherich* conducted the pack-up in a manner to have Hall be labeled a snitch by other prisoners. Hall has failed, however, to establish that CO Smith was involved in the procedure employed by CO Escherich during the pack-up. In other words, Hall has failed to set forth sufficient allegations that could establish that CO Smith was involved in the decisions that CO Escherich made to conduct the pack-up, such as requiring Hall's presence while the copies were made. In the opinion of the undersigned, CO Smith's alleged actions of directing a pack-up or having copies made of Hall's documents are not actions that rise to the level of adverse conduct for purposes of supporting a retaliation claim.

  c. **CO Smith's Reason for the Pack-up**

To satisfy the third element of a retaliation claim, Hall must show that CO Smith initiated the pack-up due to Hall's protected conduct. To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the

9

retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

CO Smith acknowledges that he requested the pack-up because of Hall's Court of Claims lawsuit, but states that he wanted an updated inventory of Hall's property on May 12, 2020, because the records that CO Smith had were either missing or completed inaccurately. (ECF No. 46-1, PageID.442 (Affidavit of CO Smith).)

CO Smith asked PC Thompson to make copies of any inventories or property receipts that Hall had in his possession from August or September of 2019 because that was when Hall claimed his property was improperly packed and inventoried resulting in the loss or $7,000.00 worth of property. (*Id.*) CO Smith also determined that he did not have any records of the television held as contraband that was delivered to URF in September of 2019. (*Id.*, PageID.443.) CO Smith was looking for a copy of the Notice of Intent to Conduct an Administrative Hearing regarding the television. (*Id.*)

Later that day, PC Thompson emailed CO Smith to inform him that the inventory was completed and that copies of Hall's paperwork were being made. (*Id.*) CO Smith then went to G Unit where the copy machine was located and found CO Escherich making copies of Hall's paperwork. (*Id.*) CO Smith looked at the

paperwork that CO Escherich had copied but did not see anything that he needed so he returned all the paperwork and copies to Hall. (*Id.*, PageID.444.) CO Smith concedes that he may have said "I got what I needed" because he was trying to obtain an accurate inventory of Hall's property. (*Id.*) CO Smith states that he was not trying to prove anything to Hall or to make any point to Hall. (*Id.*) CO Smith explains that he "was trying to correct errors and omissions in the property room records regarding Hall's property that [he] realized existed when [he] received Hall's lawsuit regarding his property." (*Id.*)

CO Smith's affidavit is confirmed by his emails and the responses that he received from PC Thompson on the day of the inventory – May 12, 2020. On that day, CO Smith wrote:

> **From:** Smith, Scott E. (MDOC) <SmithS48@michigan.gov>
> **Sent:** Tuesday, May 12, 2020 9:19 AM
> **To:** Batho, Robert J. (MDOC) <bathor@michigan.gov>
> **Cc:** Ross, Tim (MDOC) <RossT@michigan.gov>; Bergeron, Dennis P. (MDOC) <bergerond@michigan.gov>; Thompson, Connie M. (MDOC) <thompsonc11@michigan.gov>
> **Subject:** Hall 236333 H-1-75
>
> Has a pending property lawsuit, in which myself and other officer's are named. A meticulous property inventory should be done on what he currently has. To include how many photo albums, any legal work, how much estimate volume, all electronics, footlocker, what color, Tv what make/model. Clothing, sweats, coat, ect. Any copies of a property pack up/Inventory done August/September 2019 should be copied, dark enough to be legible, if possible. THEY SHOULD NOT BE CONFISCATE, ONLY COPIED AND RETURNED, if they exist. Thanks.
>
> Give Hall a copy of the inventory and send a copy to Property.

(ECF No. 45-6; *see also* ECF No. 45-11 (emails from CO Smith and responses from PC Thompson).) What is clear is that CO Smith did not have a nefarious purpose for the pack-up. CO Smith simply wanted an inventory record of the property that

Hall had in his possession because the records associated with Hall's property were missing or completed inadequately and because Hall was claiming that $7,000.00 worth of his personal property was missing. (ECF No. 46-1, PageID.442.)

Finally, the record shows that CO Smith did not dictate to PC Thompson how to conduct the pack-up. CO Smith was not involved in the actual pack-up until he went to G Unit to obtain the copies of the inventory records. At that point, he returned Hall's property to him and gave him the copies that CO Escherich had made of Hall's documents.

In the opinion of the undersigned, there exists no genuine issue of fact that CO Smith acted with a retaliatory motive. The record shows that CO Smith was looking for a current property inventory and any copies of previous inventories that Hall had in his possession at the time he requested the pack-up. (ECF No. 45-9 (Hall's property inventory on May 12, 2020).) Although there exists a genuine issue of material fact whether the filing of Hall's Court of Claims lawsuit was protected conduct, CO Smith has established that no genuine issue of material fact exists to show that his request for an inventory pack-up was adverse or had a retaliatory purpose.

### V. Conspiracy

Hall asserts that CO Smith, PC Thompson and CO Escherich entered a conspiracy to conduct a pack-up and to do it in a manner that would cause other prisoners to believe he was a snitch.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943 44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

First, as explained, it is recommended that the Court find that CO Smith did not retaliate against Hall by requesting a pack-up of Hall's property. If there was no act of retaliation, Hall's conspiracy claim must also be dismissed.

Second, there exists no evidence that can support a conspiracy claim. Hall says that the fact that he received a copy of the September 29, 2019, property sheet from defense counsel (ECF No. 1-2, PageID.22), proves that CO Smith had the property inventory before the May 12, 2020, pack-up and that his sole reason for the pack-up was to retaliate. But CO Smith wanted more than just the September 29, 2019, property sheet. His email stated he needed a current inventory of Hall's property. (ECF No. 45-6.) CO Smith asked PC Thompson to obtain the current

13

inventory, property sheets in Hall's possession, and any documentation concerning Hall's television set, including the apparent wrong television set that was sent to the prison for Hall. (*Id.*) Hall argues that because PC Thompson was involved in misplacing his television set, she had a motive for engaging in a conspiracy against him. But Hall has failed to set forth specific facts establishing a conspiratorial objective or that Defendants engaged in conspiratorial conduct in conducting the pack-up.

Hall's strongest claim is that CO Escherich conducted the pack-up in a manner that made other prisoners believe that Hall was a snitch for CO Escherich. It is the opinion of the undersigned that Hall has failed to set forth allegations that could establish that Defendants engaged in a conspiracy to get other prisoners to believe that he was CO Escherich's informant. PC Thompson asked CO Escherich to conduct the pack-up. (ECF No. 45-8, PageID.344 (Affidavit of PC Thompson), ECF No. 45-10, PageID.354 (Affidavit of CO Escherich).) While in H unit, CO Escherich told Hall to pack his property and bring it the housing unit lobby. (ECF No. 45-10, PageID.354). CO Escherich did not have time to make copies, so he had Hall bring documents to G Unit, where the copy machine was located, and place his documents in a locked cabinet until there was time to make the copies. (*Id.*) When CO Escherich was ready to make the copies, he brought Hall back to G Unit to retrieve Hall's documents and he started making copies. (*Id.*) CO Escherich states that while he was making copies, CO Smith came to the unit and took over. (*Id.*) CO Escherich then went back to his normal duties. (*Id.*) Again, contrary to Hall's

14

claims, the evidence presented fails to establish a genuine issue of material fact with respect to the alleged conspiracy. CO Smith simply wanted a full accounting of Hall's personal property because Hall's property records were missing or inadequate and because Hall had asserted that CO Smith and other officers had lost $7,000.00 worth of Hall's personal property.

In the opinion of the undersigned, Defendants have established that no genuine issue of fact exists which could support Hall's conspiracy claims against them.

## VI. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).

Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable

> official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because the undersigned finds that there are no genuine issues of material fact, and that CO Smith did not retaliate against Hall for engaging in protected conduct or conspire against Hall with CO Escherich and PC Thompson, the undersigned also finds that Defendants are entitled to qualified immunity.

## VII. Official Capacity Claim

If the Court decides to allow one or more of Hall's claims to go forward, the Court should dismiss Hall's claims against Defendants in their official capacities.

To the extent that Hall seeks damages in Defendants' official capacity, his claims are barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Hall seeks money damages, costs, and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[6]

---

[6] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id*. Hall requested injunctive relief to prevent CO Smith from communicating with him and a declaratory judgment against Defendants. (ECF No. 1, PageID.10, 12.)

18

## VIII. Conclusions and Recommendation

It is respectfully recommended that the Court conclude that Hall's retaliation claim fails because the inventory pack-up and copying of some of his documents were not adverse actions, and CO Smith did not act with a retaliatory purpose in requesting a pack-up to obtain an accurate inventory of Hall's property. It is further, recommended that the Court find that Defendants did not engage in a conspiracy. It is recommended that the Court grant Defendants' motion for summary judgment because there exists no genuine issue of fact which can support Hall's retaliation and conspiracy claims against Defendants.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: December 27, 2022                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U.S. MAGISTRATE JUDGE